Burke, J. (dissenting).
We are unable to agree to affirmance of these defendants ’ convictions. This is the sort of case where feelings run high—any case involving the vicious killing of a police officer is bound to produce such feelings. But it is just this sort of case that demands scrupulous care on the part of the authorities to prevent the sort of claims that are now made here by these defendants. In the instant case, unfortunately, no such care was taken. Here, rather, the record reveals a lack of concern on the part of a number of those charged with responsibility for the administration of criminal justice who had any contact with this case with preventing possible reversible error. As a result, we have before us three convictions for most serious crimes that, under all the circumstances here presented, hint strongly of unfairness. This, where it seems clear conviction of these defendants would likely have been obtained even if the utmost moderation had governed the conduct of the authorities.
To begin with, three assistant district attorneys sat throughout the night at the Sixth Precinct Station house of the Nassau County Police in Roslyn while teams of police officers incessantly questioned the defendant Stanbridge, an 18-year-old youth, in an effort to obtain a confession. It was clear at the time that Stanbridge could likely be connected with the killing, yet apparently none of the assistant district attorneys made even any effort to sit in on the interrogation of this defendant until the police were satisfied that they had obtained all that they could *710 from him. This was not until 8:00 a.m., when one of the assistant district attorneys took over and began questioning the suspect further. (Stanbridge had been picked up about midnight.) Defendant Closter was picked up at 3:00 a.m. and the same procedure was followed with him. Presumably, Moll also received this treatment, but he does not urge on this appeal that his confession was a product of coercion (only that it was taken after his request for counsel had been denied).
On arraignment the Magistrate was advised of the suspects’ complaints concerning police brutality, yet he refused their request for a court-ordered medical examination, commenting simply that this would be taken care of by the jail authorities. He also refused their request that they at least be allowed to exhibit in court their claimed injuries. The same requests were made some 30 minutes later to another Judge, with the added allegation that the jail doctor on examining defendants purposely ignored their injuries, and he also refused the requests. Subsequently, the police officers involved and the jail officials all swore that no one laid a hand on the suspects and no injuries were observed, but independent verification of the testimony of these witnesses, whose sympathy toward and identification with the cause of the prosecution in a case such as this must be obvious, was made forever impossible. (The arraigning Magistrate and his court stenographer later testified that they noticed no injuries on the parts of the suspects ’ bodies that were visible to them, but it is ingenuous to suppose that the police officers, if in fact they did beat these defendants, would have beaten them in such a way that the marks of such abuse would be obvious on arraignment. At the Huntley hearing counsel representing the defendants testified as to observing signs of injuries.)
The trial court’s later reading of People v. Huntley (15 N Y 2d 72) as mandating that he sit on the Huntley hearing was uncalled for. As we pointed out in People v. Horton (18 N Y 2d 355, 362), the trial court has discretion as to whether or not to disqualify himself. This, we believe, is the only fair reading that can be given Huntley and. here discretion would seem to have called for disqualification.
Finally, we do not believe the court on the Huntley hearing was free to reject defendant Moll’s uncontradicted testimony as to the denial of counsel before his confession was obtained. The People had available numerous witnesses who would have been *711 able to rebut this testimony, if in fact Moll’s claim was false. The failure of Moll to testify on his trial and raise this point cannot reasonably be held to impeach his later claim. If he had done so he would have been open to unrestricted cross-examination as to his part in the crime.
On these grounds we would reverse and order new trials for all defendants.
Judgments affirmed.